**CIVIL ACTION No.  4:22-cv-321**

---

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

---

JMV Holdings, LLC,
Debtor, Bankruptcy Case No. 18-42552

---

Jennifer C. Ruff, Appellant

v.

Suzann Ruff and Christopher Moser, Trustee, Appellees

---

Appeal from the United States Bankruptcy Court
Eastern District of Texas, Sherman Division
Related to Adversary Proceeding No. 21-04003

---

**BRIEF OF APPELLANT**

---

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com

**ATTORNEYS FOR APPELLANT**

## CORPORATE DISCLOSURE STATEMENT

Appellant, Jennifer C. Ruff ("Ruff") is a natural person and need not make a corporate disclosure pursuant to Fed. R. App. P. 26.1 and/or Fed. R. Civ. P. 7.1.

## CERTIFICATE OF INTERESTED PERSONS

Appellant Jennifer C. Ruff certifies that the following list is, to the best of his knowledge, a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, or other legal entities (along with their counsel of record) who or which are financially interested in the outcome of the appeal.

**Jennifer C. Ruff (Appellant)**
Counsel:
Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202

**Suzann Ruff (Appellee)**
Counsel:
Dennis Olson
1412 Main Street, Suite 2600
Dallas, TX 75202

**Christopher Moser, Trustee, Appellee**
Counsel:
Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX  75201

## **TABLE OF AUTHORITIES**

CASES                                                                                          PAGE NO.

*Official Comm. Of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530,
538 (5th Cir. 2015) ............................................................................................................5

*Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004)......................................................5

*Webb v. Town of St. Joseph*, 560 F. App'x 362, 365 (5th Cir. 2014)............................13

*Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); see *Smith v. Brown*,
51 S.W.3d 376, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)......................13

*Smith v. Brown*, 51 S.W.3d 376, 379 (Tex. App.—Houston [1st Dist.] 2001,
pet. Denied) .....................................................................................................................13

*Mayes v. Stewart*, 11 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2000, pet.
denied), disapproved of on other grounds by *Agar Corp., Inc. v. Electro Circuits Int'l*,
LLC, 580 S.W.3d 136 (Tex. 2019) ................................................................................ 14

*Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985) ..................... 14, 16

*Leonhard v. United States*, 633 F.2d 599, 616 (2d Cir. 1980), *cert. denied*,
451 U.S. 908, 101 S. Ct. 1975, 68 L. Ed. 2d 295 (1981)............................................... 14

*Smith v. Hood*, 130 U.S. App. D.C. 43, 396 F.2d 692, 693 (D.C. Cir. 1968)...............14

*Sayre v. Crews*, 184 F.2d 723, 724 (5th Cir. 1950) ......................................................14

Aerojet-*General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)............................15

Hardy *v. Johns-Manville Sales Corp.* 681 F.2d 334, 340 (5th Cir. 1982) .................... 15

*Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 327 n.7, 99 S. Ct. 645, 649 n. 7, 58 L.
Ed. 2d 552 (1979) ........................................................................................................... 16


STATUTES                                                                                       PAGE NO.

28 U.S.C. § 1334(b) ...........................................................................................................5

28 U.S.C. §§ 157(a), (b) .....................................................................................................5

28 U.S.C. § 158(a) .............................................................................................................5

Federal Rule of Bankruptcy Procedure 8002(a)(1)............................................................5

Texas Family Code § 3.01(2)............................................................................................18

Texas Family Code § 3.005 ...................................................................................18

<u>PUBLICATIONS</u>                                                                            <u>PAGE NO.</u>

1B Moore's Federal Practice, para. 0.411[11] (1984) ...................................................14

18 Wright, Miller and Cooper, Federal Practice and Procedure § 4459 (1981) ......................... 14

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ....................................................................2

CERTIFICATE OF INTERESTED PERSONS ..................................................................2

TABLE OF AUTHORITIES ..............................................................................................3

I.  JURISDICTIONAL STATEMENT ..............................................................................5

II.  STATEMENT OF ISSUES AND STANDARD OF APPELLATE REVIEW ......................5

III.  STATEMENT OF THE CASE....................................................................................6

IV.  ARGUMENT............................................................................................................12

      A.     The bankruptcy court erred in concluding that the issue of whether Suzann
            Ruff holds an equitable interest in the Joyce Way Property as a result of a
            constructive trust was not previously litigated or decided....................................12

      B.     The bankruptcy court erred in concluding that Michael Ruff and Appellant
            Jennifer Ruff share an identity of interests with respect to the state court
            judgment such that res judicata applies as to the enforceability of the Family
            Settlement Agreement ("FSA") and Jennifer's arguments for release
            and indemnification under the FSA. ....................................................................13

      C.     The bankruptcy court erred in concluding that Michael Ruff did not gift
            Appellant Jennifer Ruff the funds to purchase the Joyce Way property,
            which would have rendered them as her separate property. ................................16

      D.     The bankruptcy court erred in finding that the Joyce Way Property was
            Michael Ruff's separate property under the alleged premarital agreement
            And was being held in title only by JMV Holdings, LLC for his benefit. ............17

      E.     The bankruptcy court erred in finding and concluding that the Arbitration
            Award and Judgment traced Michael's alleged misappropriation of assets to
            JMV Holdings, LLC. ..........................................................................................18

      F.     The bankruptcy court erred in concluding that Appellant Jennifer Ruff
            received a preferential transfer when she recorded the deed of trust
            before JMV Holdings, LLC to filed its bankruptcy petition. ...............................20

      G.     The bankruptcy court erred in disallowing Appellant's proof of claim................20

V. CONCLUSION...............................................................................................................21

CERTIFICATE OF COMPLIANCE..................................................................................22

CERTIFICATE OF SERVICE ..........................................................................................22

## I.     JURISDICTIONAL STATEMENT

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This action is a core proceeding and the bankruptcy court had jurisdiction and authority to adjudicate such matters and enter a final order on the same pursuant to 28 U.S.C. §§ 157(b) and this Court's order of reference, which is authorized under 28 U.S.C. § 157(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409 and this Court's order of reference.  The Bankruptcy Court entered its *Judgment* (R. 1130)[1] on March 31, 2022.  Pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1), Appellant timely filed her *Notice of Appeal* in the Bankruptcy Court on April 14, 2022.  This Court has jurisdiction to hear this appeal of the Bankruptcy Court's final order pursuant to 28 U.S.C. § 158(a).

## II.     STATEMENT OF ISSUES AND STANDARD OF APPELLATE REVIEW

The district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, and the bankruptcy court's conclusions of law de novo. Although the district court may benefit from the bankruptcy court's analysis of the issues presented, the amount of persuasive weight, if any, to be accorded the bankruptcy court's conclusions is entirely subject to the district court's discretion. *Official Comm. Of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 538 (5th Cir. 2015).  The court reviews mixed questions of fact and law *de novo*. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

A.     Did the bankruptcy court err in concluding that the issue of whether Suzann Ruff holds an equitable interest in the Joyce Way Property due to a constructive trust was not previously litigated or decided?

- This is a question of law to be reviewed *de novo*.

---

[1] References to the record on appeal will be referenced as "R. ____," and refer to the page number of the record.

B.      Did the bankruptcy court err in concluding that Michael Ruff and Appellant Jennifer Ruff share an identity of interests with respect to the state court Judgment such that *res judicata* applies as to the enforceability of the Family Settlement Agreement ("FSA") and Jennifer's arguments for release and indemnification under the FSA?

- This is a question of law to be reviewed *de novo*.

C.      Did the bankruptcy court err in concluding that Michael Ruff did not gift Appellant Jennifer Ruff the funds to purchase the Joyce Way property, which would have rendered them as her separate property?

- This is a mixed question of fact and law to be reviewed *de novo*.

D.      Did the bankruptcy court err in finding that the Joyce Way Property was Michael Ruff's separate property under the alleged premarital agreement and was being held in title only by JMV for his benefit?

- This is a question of law to be reviewed *de novo*.

E.      Did the bankruptcy court err in finding and concluding that the Arbitration Award and Judgment traced Michael's alleged misappropriation of assets to JMV Holdings, LLC.

- This is a mixed question of fact and law to be reviewed *de novo.*

F.      Did the bankruptcy court err in concluding that Jennifer received a preferential transfer when she recorded the deed of trust before causing the debtor to file its petition?

- This is a question of law to be reviewed *de novo*.

G.      Did the bankruptcy court err in disallowing Appellant's proof of claim?

- This is a mixed question of fact and law to be reviewed *de novo*.

### III.   <u>STATEMENT OF THE CASE</u>

1.      Suzann Ruff ("Suzann") is the widow of Arthur Ruff ("Arthur"). Stipulation of Fact No. 1, R. 1097.

2.      Arthur had been an extremely successful businessman and Suzann and Arthur amassed a considerable amount of wealth during the time of their marriage. Stipulation of Fact No. 2, R. 1097.

3.      Arthur died in 1998. Stipulation of Fact No. 3, R. 1097.

4.       Following Arthur's death, Suzann turned to one of her sons, Michael Arthur Ruff ("Michael"), to help manage her financial affairs.. Stipulation of Fact No. 4, R. 1097.

5.      Michael is married to Jennifer C. Ruff, Appellant herein ("Jennifer" or "Appellant"). Stipulation of Fact No. 5, R. 1097.

**<u>The Trust</u>**

6.      On July 26, 2007, Suzann, as Settlor, and Michael, as the initial trustee, executed an agreement which established the Ruff Management Trust (the "Trust"). Stipulation of Fact No. 6, R. 1097.

7.      Suzann was the primary beneficiary of the Trust. Stipulation of Fact No. 7, R. 1098.

8.      Shortly thereafter, Suzann transferred substantially all her assets to the Trust. Stipulation of Fact No. 8, R. 1098.

9.      Due to a family dispute, Michael resigned as trustee of the Trust and Frost Bank was appointed to serve as the successor trustee of the Trust. Stipulation of Fact No. 9, R. 1098.

10.     In connection with the substitution of trustees, certain documents were executed to acknowledge the validity of the Frost appointment and to release Frost from liability (collectively, the "Frost Agreements"). Stipulation of Fact No. 10, R. 1098.

11.     In 2011, Suzann initiated litigation in the Probate Court of Dallas County, Texas (the "Probate Court"); Cause No. PR-11-02825-1 (the "Fiduciary Lawsuit") to pursue claims of breach of fiduciary duty and fraud against Michael in relation to his prior administration of the Trust and her real property in Palo Pinto County, Texas. Stipulation of Fact No. 11, R. 1098.

12.     Thereafter, relying upon an arbitration provision in the Frost Agreements, Michael sought to resolve the dispute with his mother through arbitration, filing a Demand for Arbitration against Suzann with the American Arbitration Association ("AAA"); Case No. 71-20-1200-0640 (the "Arbitration") and a motion to compel arbitration in the Fiduciary Lawsuit. Stipulation of Fact No. 12, R. 1098.

13.     The Probate Court granted the motion and ordered the parties to arbitrate their dispute. Stipulation of Fact No. 13, R. 1098.

14.     Suzann then filed a counterclaim in the Arbitration to assert the same breach of fiduciary duty and fraud claims against Michael as she had asserted in the Fiduciary Lawsuit. Stipulation of Fact No. 14, R. 1098.

15.     On December 7, 2017, AAA issued its Final Award in Arbitration (the "Arbitration Award", R. 167) pursuant to which the panel awarded Suzann $49 million in actual damages, greater than $3.9 million in attorney's fees and approximately $12.8 million in prejudgment interest against Michael. Additionally, the panel determined and declared that "a constructive trust exits and is imposed in favor of Suzann on (1) Michael Ruff's interests, of whatever nature, in any entity which he formed or invested, in whole or part with monies or property misappropriated from, and originating with Suzann in all capacities, which the Panel finds includes, but is not limited to, any interest whatever nature Michael has in the entities listed on Exhibit "A" attached (to the Arbitration Award) (the "Entity and Property Listing")… and (2) any real property belonging to or originating from property belonging to Suzann Ruff, in all her capacities, and held or owned, in whole or in part, by Michael Ruff, in any capacity, relating in any way … specifically including, but not limited to those properties identified in subsections hhhhhh through kkkkkk on the Entity Property Listing". Stipulation of Fact No. 15, R. 1098.

16.     Armed with the Arbitration Award, Suzann returned to the Fiduciary Lawsuit to request the Probate Court's entry of a final judgment consistent therewith. On April 10, 2018, the Dallas County Probate Court entered a Modified and Corrected Final Judgment ("Judgment", R. 164) incorporating the terms of the Arbitration award. Stipulation of Fact No. 16, R. 1099.

17.     Neither Jennifer Ruff nor JMV Holdings, LLC, the Debtor in the above-captioned bankruptcy case ("JMV"), was named as a party in the Arbitration Proceeding, did not participate in such Arbitration Proceeding, and were not named as a party against whom relief was being granted in the Final Award or the Judgment. Stipulation of Fact No. 17, R. 1099.

18.     Neither Jennifer nor the Debtor was named as a party in Cause No. PR-11-02825-1 ("State Court Proceeding") in the Probate Court #1 of Dallas County, Texas (hereafter the "State Court") filed by Suzann to confirm and enforce the Final Award. Stipulation of Fact No. 18, R. 1099.

19.     The only reference in the Final Award or the Judgment relating to the subject matter of this Adversary Proceeding is that the Debtor and JMV Managers, LLC were both listed on Exhibit A to the Final Award. Stipulation of Fact No. 19, R. 1099.

20.     More specifically, the Judgment provided as follows: "A constructive trust exists and is imposed in favor of Suzann Ruff on Michael Ruff's interests, of whatever nature, in any entity which he formed or invested, in whole or in part with monies or property misappropriated from, and originating with Suzann Ruff in all capacities, which the Panel finds includes, but is not limited to, any interest of whatever nature Michael has in the entities listed on Exhibit "A" to the final Award attached hereto and made a part hereof for all purposes." Stipulation of Fact No. 20, R. 1100.

21.     Michael Ruff then filed an appeal of the Judgment to the Fifth Court of Appeals for the State of Texas which affirmed the Judgment. Stipulation of Fact No. 21, R. 1100.

22.     Michael Ruff then filed an appeal to the Texas Supreme Court. Stipulation of Fact No. 22, R. 1100.

23.     The Texas Supreme Court in Cause No. 20-0833, styled *Michael A. Ruff, et al. v. Suzann Ruff, Individually and in her Capacity as Trustee of the Ruff Management Trust, et al.* (the "State Court Appeal") denied Michael Ruff's Petition for Review of the Judgment and subsequently denied Michael Ruff's motion for rehearing. Stipulation of Fact No. 23, R. 1100.

### JMV (Debtor)

24.     JMV Holdings, LLC ("JMV" or "Debtor") is a sole member, Texas limited liability company. Stipulation of Fact No. 24, R. 1100.

25.     Jennifer Ruff acquired the JMV Membership Interest during her marriage to Michael Ruff. Stipulation of Fact No. 25, R. 1100.

26.     JMV Managers, LLC ("JMV Managers") is a Texas limited liability company which has served as manager of the Debtor from its organization until December 31. 2020. Stipulation of Fact No. 26, R. 1100.

27.     On December 29, 2009, JMV bought the real property and improvements located at 7047 Joyce Way, Dallas, Texas (the "Joyce Way Property") for $247,500.00. Stipulation of Fact No. 27, R. 1100.

28.     Prior to the adversary proceeding below, no action or proceeding has ever been filed or initiated by Suzanne Ruff, nor has any factual or legal determination has ever been made, as to the source or nature of the funds used by JMV to purchase the Joyce Way Property. Stipulation of Fact No. 28, R. 1100.

29.     On November 9, 2018, JMV executed a Promissory Note ("Note") in the original principal amount of $200,000 payable to Jennifer. Stipulation of Fact No. 29, R. 1101.

30.     The Note was secured by a Deed of Trust. Stipulation of Fact No. 30, R. 1101.

31.     On November 9, 2018, the Deed of Trust was filed in the real property records of Dallas County, Texas (the "Transfer"). Stipulation of Fact No. 31, R. 1101.

32.     The sole asset of JMV was the Joyce Way Property which was sold by the Trustee during the administration of the JMV bankruptcy case. Stipulation of Fact No. 32, R. 1101.

**The JMV Bankruptcy**

33.     On November 9, 2018 (the "Date of Bankruptcy"), JMV Holdings LLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Stipulation of Fact No. 33, R. 1101.

34.     On May 15, 2019, the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code. Stipulation of Fact No. 34, R. 1101.

35.     Christopher J. Moser is the acting Chapter 7 trustee of the Debtor's bankruptcy estate. Stipulation of Fact No. 35, R. 1101.

36.     On March 5, 2019, Suzann filed Proof of Claim No. 3-1 as an unsecured claim in the amount of $65,000,000. Stipulation of Fact No. 36, R. 1101.

37.     On December 10, 2020, Suzann filed an amended Proof of Claim No. 3-2 in the amount of $65,000,000. Proof of Claim No. 3-2 asserts an equitable lien on all the assets of JMV. Stipulation of Fact No. 37, R. 1101.

38.     On August 13, 2019, Jennifer filed Proof of Claim 6-1 as a secured claim in the amount of $743,811.82. Jennifer asserts a secured claim based upon a Deed of Trust filed against the Joyce Way Property on November 9, 2018. Stipulation of Fact No. 38, R. 1101.

39.  In Proof of Claim No. 6-1, Jennifer asserts that she is owed a secured debt of $743,81182 comprised of:

    a. House Purchase Price $247,500.00

    b. Accrued Interest (10% APR) $225,362.49

c. Bankruptcy Attorney Retainer $15,000.00

d. Home Improvements $100,000.00

e. Property Taxes (2009-2019) $ 83,949.33

f. Insurance (2009-2019) $ 24,000.00

g. Utilities and Maintenance (2009-2019) $ 48,000.00

Total Claim: $743,811.82

Stipulation of Fact No. 39, R. 1102.

40.   On November 19, 2019, the bankruptcy court entered its Order Authorizing Trustee to Sell Real Property Free and Clear of All Liens, Claims and Encumbrances which authorized the Trustee to sell the Joyce Way Property. Stipulation of Fact No. 40, R. 1102.

41. The Trustee is currently holding approximately $420,000.00 of proceeds from the sale of the Joyce Way Property. Stipulation of Fact No. 41, R. 1102.

42. On May 14, 2020, Jennifer Ruff and the Trustee entered into a tolling agreement wherein they agreed that all applicable statutes of limitations and other time limitations arising under 11 U.S.C. §§544, 545, 547, 548, 549 and 550 would be tolled through March 4, 2021. Stipulation of Fact No. 42, R. 1102.

43.   On March 31, 2022, after trial of the adversary proceeding below, the bankruptcy court entered a judgment in favor of the Appellees herein.  Judgment, R. 1130. The court's findings of fact and conclusions of law are located at R. 1104.

## IV.   <u>ARGUMENT</u>

**A.   <u>The bankruptcy court erred in concluding that the issue of whether Suzann holds an equitable interest in the Joyce Way Property as a result of a constructive trust was not previously litigated or decided.</u>**

The bankruptcy court concluded as follows:

"On the bankruptcy petition date, JMV held legal title to the Joyce Way Property. The Joyce Way Property was property of JMV's bankruptcy estate to the extent of JMV's legal interest.

The chapter 7 trustee's motion to sell the Joyce Way Property was not contested. Paragraph O of the Sale Order recited that Suzann and Jennifer had filed claims against JMV's estate. And Paragraph U recited that Jennifer and Suzann had consented to the sale of the Joyce Way Property and reviewed the Sale Order, which was drafted by the chapter 7 trustee … The Court, therefore, finds and concludes that the issue of whether Suzann holds an equitable interest in the Joyce Way Property as a result of a constructive trust was not previously litigated or decided. Suzann is not barred from asserting that the Joyce Way Property and any interest of whatever nature Michael has in JMV were subject to a constructive trust on the bankruptcy petition date."

Conclusion of Law No. 4, R. 1118.

This conclusion misinterprets the effect of *res judicata* on Suzann Ruff's ability to assert an equitable interest and constructive trust on the Joyce Way Property.  The doctrine of *res judicata* precludes further litigation of claims that were actually litigated in the past *or claims that could have been brought* in a prior action.[2]  The bankruptcy court focused solely on its conclusion that "the issue of whether Suzann holds an equitable interest in the Joyce Way Property as a result of a constructive trust *was not previously litigated or decided.* " Conclusion of Law No. 5, R. 118. (emphasis added).  In other words, the court considered only the <u>actual</u> claims brought in litigating the proposed sale of the Joyce Way Property and not the claim that <u>could have and should have been brought</u> as a part of the sale procedure, i.e., whether Suzann had an equitable interest in the Joyce Way Property.  Suzann was aware of her claim of an equitable interest and constructive trust but chose not to bring it (See Suzann's proofs of claim, R. 182, 185), and voluntarily assented to the sale without raising it at all. Finding of Fact No. 51, R. 1116.  As such, Suzann's claim of an equitable trust over the proceeds of sale is barred by *res judicata*, and the bankruptcy court erred as a matter of law by ruling otherwise.

**B.**   <u>**The bankruptcy court erred in concluding that Jennifer Ruff and Michael Ruff shared an identity of interests with respect to the Judgment such that res judicata**</u>

---

[2] "Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Webb v. Town of St. Joseph*, 560 F. App'x 362, 365 (5th Cir. 2014)."Res judicata, or claims preclusion, prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); see *Smith v. Brown*, 51 S.W.3d 376, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

**applied as to the enforceability of the Family Settlement Agreement ("FSA") and Jennifer's arguments for release and indemnification under the FSA.**

The bankruptcy court concluded that Jennifer Ruff should be bound under the doctrine of *res judicata* by the Judgment against Michael Ruff, even though she was not a party to the Judgment or the suit in which it was entered.   Conclusion of Law no. 16, R. 1120. The court reasoned that Jennifer and Michael were in privity with one another because they shared an identity of interests with respect to the Judgment. Conclusion of Law no. 17, R. 1120. The court made no fact finding to support this conclusion and appears to rely solely on the husband-wife relationship, although it never so states.

Parties can be in privity in three ways: (1) they can control an action even if they are not parties to it; (2) their interest can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action.[3] The bankruptcy court concluded with regard to item (2) that "Here, Jennifer's interest in the arbitration and the State Court Proceeding was represented by her husband". Conclusion of law no. 17, R. 1120.

However, "close family relationships are not sufficient by themselves to establish privity with the original suit's party, or to bind a nonparty to that suit by the judgment entered therein"[4]. The bankruptcy court offered no reasoning or fact finding in support of its bare conclusion that Jennifer's interests were represented by Michael in the arbitration or state court proceeding sufficient simply because she is his wife. The only evidence in the record on this issue is Jennifer's express declarations to the contrary, i.e., that she was <u>not</u> so represented and had no

---

[3] *Mayes v. Stewart*, 11 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), disapproved of on other grounds by *Agar Corp., Inc. v. Electro Circuits Int'l*, LLC, 580 S.W.3d 136 (Tex. 2019)

[4] *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985), citing *Leonhard v. United States*, 633 F.2d 599, 616 (2d Cir. 1980), *cert. denied*, 451 U.S. 908, 101 S. Ct. 1975, 68 L. Ed. 2d 295 (1981); *Smith v. Hood*, 130 U.S. App. D.C. 43, 396 F.2d 692, 693 (D.C. Cir. 1968); *Sayre v. Crews*, 184 F.2d 723, 724 (5th Cir. 1950); [**9] 1B Moore's Federal Practice, para. 0.411[11] (1984); 18 Wright, Miller, and Cooper, Federal Practice and Procedure § 4459 (1981).

knowledge of the arbitration or state court proceeding. Deposition of Jennifer Ruff, R. 688 (lines 2-12), R. 691 (lines 1-3); R. 703 (lines 10-18).

The bankruptcy court appears to rely on the concept of "virtual representation", by which a nonparty may be bound because the party to the first suit "is so closely aligned with his [the nonparty's] interests as to be his virtual representative".[5] But this concept requires more than the mere existence of a family relationship. For example, the 5th Circuit has expressly ruled that the relationships between siblings or a mother and daughter are not adequate, ruling that "privity is not established by the mere fact that persons may be interested in the same question or in proving the same set of facts."[6]

The 5th Circuit has established that "virtual representation demands the existence of an express or implied legal relationship *in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues*."[7] (emphasis added). A specific fact finding is required before a court may conclude a person was "virtually represented"[8].   There was no conclusion or finding by the bankruptcy court of accountability by Michael to Jennifer and no showing of identical issues. The bankruptcy court's conclusion of law no. 17 (R. 1120) that "Here, Jennifer's interest in the arbitration and the State Court Proceeding was represented by her husband" is completely unsupported by any fact finding.

---

[5] *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) ("Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.)

[6] *Hardy v. Johns-Manville Sales Corp.* 681 F.2d 334, 340 (5th Cir. 1982).

[7] *Id.*, at 339.

[8] *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) ("The question whether a party's interests in a case are virtually representative of the interests of a nonparty is one of fact for the trial court.")

Because Jennifer was not in privity with her husband as to the Judgment, to hold her accountable for it when she was not a party to the suit is a violation of due process.[9] By ruling that Jennifer was not released from Suzann's claims by the FSA because she is bound by the Judgment against Michael, the bankruptcy court committed a reversible error of law.

**C.**   **The bankruptcy court erred in concluding that Michael did not gift Jennifer the funds to purchase the Joyce Way property, which would have rendered the funds and the property as her separate property.**

The bankruptcy court found that Michael used his own funds to purchase the Joyce Way Property; therefore, the Joyce Way Property was not Jennifer's separate property and was subject to the Judgment. Conclusion of law No. 21, R. 1121. This is despite the fact that Michael and Jennifer Ruff both testified that Michael gifted funds constituting his separate property to Jennifer for the purchase of the property. Trial testimony of Michael Ruff, R. 1268-1272. Deposition of Jennifer Ruff, R. 699, 700, 702, 714, 715, 725. Trial Declaration of Jennifer Ruff, R. 733-744. Michael further testified that the funds were his earnings, which were his separate property per the terms of a premarital agreement. R. 1272. *Although there was no controverting evidence to counter Michael's and Jennifer's testimony*, the bankruptcy court implicitly found that the Ruffs' testimony as to the creation of a premarital agreement was not credible, leading to the apparent conclusion that the alleged premarital agreement did not exist. See repeated references in the bankruptcy court's findings which indicate the court's strong skepticism. Findings of fact no. 25-30, R. 1110., 1111.[10] But at this point the court's logic breaks down.  The court relied on that very

---

[9] "An underlying principle is that 'it is a violation of due process for a judgment [in a prior suit] to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.' *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985), quoting *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 327 n.7, 99 S. Ct. 645, 649 n. 7, 58 L. Ed. 2d 552 (1979).

[10] The bankruptcy court's findings and conclusions do not actually say the premarital agreement did not exist. But that is the only reasonable conclusion that can be reached, since the court ruled that Michael's earnings used to purchase the Joyce Way Property were not a gift of separate property.  Only under the premarital agreement could Michael's earnings have been separate property, since under the Texas Family Code, spouses' earnings are community property unless deemed separate under a marital agreement. Tex. Fam. Code §§ 3.002, 3.102(a)(1) and 4.003(a)(1).

premarital agreement in ruling that Michael's gift did not come from his separate property, i.e., the Ruffs failed to obtain a notarized writing evidencing the gift, *as required by the premarital agreement*.   Conclusion of law No. 22, R. 1121.[11] The bankruptcy court's circular reasoning constitutes a reversible error of law. Furthermore, the bankruptcy court's fact finding that Michael's gift of separate property to Jennifer was not credible, despite the fact that Michael and Jennifer's testimony was not controverted by the Appellees at trial, was clearly erroneous.

**D.**   **The bankruptcy court erred in finding that the Joyce Way Property was Michael's separate property and was being held in title only by JMV Holdings, LLC for his benefit.**

The bankruptcy court found that "… the Joyce Way Property was Michael's separate property under the alleged premarital agreement and was being held in title only by JMV for his benefit. The Judgment therefore imposed a constructive trust on the Joyce Way Property." R. 1122. However, as also noted by the court, "Michael and Jennifer testified that Michael gifted Jennifer a portion of his $3 million bonus for the purchase of the Joyce Way Property" (R. 1121), which would have rendered the Joyce Way Property as Jennifer's separate property, out of the reach of the constructive trust. The bankruptcy court chose to discredit that testimony*, although there was no controverting evidence,* instead focusing on a provision of the premarital agreement which required a notarized writing to accompany a gift.  This is inconsistent with the court's otherwise skeptical view of the premarital agreement (see argument above), but even so, the terms by which gifts may be given under the agreement do not alter Texas law, which allows gifts of separate property by one spouse to become the separate property of the recipient spouse without the need

---

[11] "However, any alleged gift of funds to Jennifer was not evidenced by a signed and notarized writing and was therefore void under the terms of the alleged pre-marital agreement. Thus, no gift occurred, Jennifer had no separate property interest in the funds, and Michael used his separate property to purchase the Joyce Way Property."

for a marital agreement.[12] In other words, the gift may not have been made according to the strict terms of the premarital agreement but was still proper under Texas law. By ignoring the effect of Texas law authorizing Michael to gift his separate property to Jennifer for the purchase of the Joyce Way Property, the bankruptcy court committed a reversible error of law.   Also, by finding that Michael's gift of separate property to Jennifer was not credible, despite the fact that Michael and Jennifer's testimony was not controverted by the Appellees at trial, the bankruptcy court committed a clearly erroneous error of fact.

**E.    The bankruptcy court erred in finding and concluding that the Arbitration Award and Judgment traced Michael's alleged misappropriation of assets to JMV Holdings, LLC.**

The Arbitration Award ruled as follows:

> A constructive trust exists and is imposed in favor of Suzann Ruff on Michael Ruff's interests, of whatever nature, in any entity which he formed or invested, in whole or in part with monies or property misappropriated from, and originating with Suzann Ruff in all capacities, which the Panel finds includes, but is not limited to, *any interest of whatever nature Michael has* in the entities listed on Exhibit "A" to the final Award attached hereto and made a part hereof for all purposes (Exhibit "A"). [emphasis added]

The bankruptcy court misinterpreted this part of the Arbitration Award to mean that the arbitration panel had actually found that Michael had an interest in JMV, but it did not.  The panel merely said that _if_ Michael had an interest in any of the entities listed on Exhibit "A" (which included JMV), then that entity was subject to the constructive trust. But the bankruptcy court went beyond that – it found as a matter of fact that:

> Both the Debtor (JMV) and JMV Managers are on the Arbitration Award and Judgment Exhibit "A" list of entities Michael formed or invested, in whole or in part with monies or property misappropriated from and originating with Suzann.
>
> [Finding of fact no. 22, R. 1110.]

---

[12] Tex. Fam. Code. §§ 3.01(2), 3.005.

Building on this incorrect finding, the bankruptcy court went on to conclude as a matter of law that:

> Likewise, the Arbitration Award and Judgment traced Michael's misappropriation of Suzann's assets to JMV.
>
> [Conclusion of law no. 25, R. 1122.]

This conclusion of law is accompanied by a footnote (footnote 7) stating the following additional conclusion:

> In her adversary complaint Jennifer argues that Suzann had some additional duty to trace her misappropriated funds to JMV. That tracing, however, necessarily occurred as part of the imposition of a constructive trust in the Judgment. *See, e.g., Hahn v. Love*, 321 S.W.3d 517, 533 (Tex. App.—Houston [1st Dist.] 2009) (in order to be entitled to a constructive trust the party, must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res.
>
> Footnote 7 to conclusion of law no. 25 (R. 1122)

This finding and conclusion are simply wrong. The arbitration panel did not trace Michael's allegedly misappropriated funds to JMV Holdings, LLC, as can be seen from the plain meaning of the passage above. The bankruptcy court assumed that because the imposition of a constructive trust must include "tracing to an identifiable res" under Texas law, then that is what the arbitration panel implicitly must have done, but it expressly did not. It merely ruled that the constructive trust attached to any entity in which Michael Ruff had *any interest of whatever nature*, not that he actually had such an interest in JMV. These errors led to the bankruptcy court's incorrect opinion that Michael had an interest in JMV and the Joyce Way house that it owned, making them subject to the constructive trust.

By finding that the Arbitration Award and Judgment traced Michael's misappropriation of Suzann's assets to JMV (finding of fact 22) the bankruptcy court committed a clear error of fact. By concluding that the arbitration panel implicitly must have conducted such a tracing when it did not (conclusion of law 25), the bankruptcy court committed a reversible error of law.

**F.      The bankruptcy court erred in concluding that Jennifer received a preferential transfer when she recorded the deed of trust before JMV Holdings, LLC filed its bankruptcy petition.**

The bankruptcy court ruled that Jennifer received a preferential transfer under 11 U.S.C. section 547. R. 1125-1127.  In so doing, the court necessarily found that Jennifer was a creditor as she asserted in her proof of claim filed in the JMV bankruptcy case.[13] One of the elements of a preferential transfer under Section 547 is that the recipient must be a "creditor" with an "antecedent debt". However, the bankruptcy court also found that Jennifer *did not* make a $200,000 loan to JMV as alleged and disallowed her proof of claim, ruling that she was *not* a creditor.[14]  These two conclusions are diametrically opposed.  One cannot be true without the other being false.  If Jennifer *was* a creditor prior to recording the deed of trust, as the court ruled in conclusion of law No. 37 (R. 1125), then she may have received a preference, but her claim would survive as an unsecured claim in the bankruptcy case.  But if Jennifer *was not* a creditor as the court ruled in conclusion of law No. 44 (R. 1127), then she did not receive a preference.

The court did not make these rulings in the alternative but ruled that Jennifer was *both a creditor and not a creditor* in reaching its conclusions.  One or the other of these conclusions is wrong. This unresolved dilemma constitutes an error of law.

**G.      The bankruptcy court erred in disallowing Appellant's proof of claim.**

The bankruptcy court disallowed Jennifer's claim in the bankruptcy case for the following reasons:

> a. Jennifer has received an avoidable transfer under § 547(b);
> b. Jennifer did not loan $200,000 to JMV to purchase the Joyce Way Property;
> c. Jennifer did not make any advances to JMV to pay for home improvements, property taxes, insurance, utilities or maintenance; and

---

[13] Conclusion of law no. 37 - "The filing of the Deed of Trust was made on Jennifer's behalf on account of an antecedent debt since Jennifer asserts she was a creditor of the Debtor prior to the recording." R. 1125.

[14] Conclusion of law no. 44 includes the following: " Jennifer did not loan $200,000 to JMV to purchase the Joyce Way Property" and "Jennifer did not make any advances to JMV to pay for home improvements, property taxes, insurance, utilities or maintenance". R. 1127.

d. Jennifer is not entitled to interest that allegedly accrued prior to the signing of the Note.

Conclusion of law No. 44, R. 1127.

But, as set out above, the court cannot rule that Jennifer was both a creditor for preferential transfer purposes above and also rule that she has no claim in the case.  One of these conclusions cannot survive the other, which is an error of law.

Furthermore, Michael and Jennifer both gave uncontroverted testimony that Michael gifted his separate property in the form of cash to Jennifer so that she could, and did, loan the money to the Debtor to purchase the Joyce Way Property with her separate property, and that Jennifer loaned her separate funds for the payment of expenses of maintaining the Property[15].  Nothing in the Appellees' evidence at trial, including the testimony of Suzann Rush or any of their exhibits, contains controverting facts to this testimony. Therefore, the bankruptcy court committed clear error on this factual issue.

## V. <u>CONCLUSION</u>

Based on the foregoing, Appellant requests this Court to reverse the judgment of the bankruptcy court and grant all further relief to which Appellant may show herself entitled.

Dated: June 16, 2022.

Respectfully submitted,

  /s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com

**ATTORNEYS FOR APPELLANT**

---

[15] See Section C above.

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned certifies this brief complies with the type-face and length requirements of Bankruptcy Rule 8015(a)(7). This brief contains 5886 words, as calculated by Microsoft Word 2016, the program used to prepare this document.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 16, 2022, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon all parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
